UNITED STATES, Appellee,

v.

Sergeant Redell GREEN, Jr., United
States Army, Appellant.

ARMY 9601821.

U.S. Army Court of Criminal Appeals.

5 May 1999.

For Appellant: Colonel John T. Phelps II, JA; Major Leslie A. Nepper, JA; Captain Thomas Jay Barrett, JA (on brief).

For Appellee: Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Major Patricia A. Ham, JA; Captain Arthur J. Coulter, JA (on brief).

Before TOOMEY, Senior Judge, CARTER, and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of rape and false swearing in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for automatic review under Article 66, UCMJ.

In two assignments of error, appellant alleges that the military judge erred when he admitted: (1) uncharged misconduct under Military Rule of Evidence 413 [hereinafter Mil.R.Evid.] without applying the Mil.R.Evid. 403 balancing test; and (2) hearsay evidence from five witnesses that did not satisfy the present sense impression or excited utter-ance exceptions to the hearsay rule under Mil.R.Evid. 803(1) and (2). We agree.

## FACTS

At approximately 0100 hours, 5 August 1996, appellant, who had been drinking, walked an intoxicated female soldier, Private E2 (PVT) A, from an enlisted club to her barracks in Yongsan, Korea. Although not expressly invited, appellant entered PVT A's room. One of PVT A's roommates, Specialist (SPC) Poret, was asleep; her other roommate, Private First Class (PFC) Roberson, had not returned for the evening. Private A immediately lay down on top of her bed covers, fully clothed, to sleep. Appellant, again without being expressly invited, lay on top of PVT A on the bed. Private A told appellant that she was tired and to leave her alone. Private A then fell asleep.

Appellant subsequently made two sworn statements describing his conduct that evening. In his first statement, dated 5 August 1996, appellant swore that PVT A did not tell him to stop in any way before, during, or after sexual intercourse and that PVT A removed her own shorts. These two statements form the basis for the false swearing specification.

In his second sworn statement, dated 6 August 1996, appellant admitted that he laid on top of PVT A on her bed, and that she told him she was tired and to leave her alone. Appellant stated that they both fell asleep. When appellant awoke, PVT A was still asleep. He then pulled her shorts and panties down. "As I was pulling the cut-off shorts down, she said stop and grabbed her cut-off's. I started to talk to her in an attempt to have sex with her. She didn't give me a negative response so I pulled her cut-offs down some more." Appellant stated that he put on a condom and had sex with PVT A for a couple of minutes and ejaculated. "I then got up to take the condom off. Around this time, she kicked at me and said something to the effect to leave. . . . I left her room."

Private A testified that she awoke when appellant was trying to remove her shorts. She pulled her shorts up, said stop, kicked at appellant, and went back to sleep. Private A

stated that when she subsequently awoke again, her shorts and panties were down. She heard a tearing noise (appellant's condom wrapper) and "almost instantaneously" appellant penetrated her vagina, from behind, with his penis. Private A kicked at appellant and told him, "No." Appellant stopped and left the room. Private A testified that she lay awake "amazed," thought about what had happened, cried, and eventually went to sleep. She did not awaken her sleeping roommates or report the incident to anyone that night.

At approximately 0800 hours the next morning, PVT A's two roommates woke and teased her because PFC Blacketer (a male friend) checked on PVT A the previous night and saw her sleeping nude from the waist down on top of her bed covers. Private A testified that she was embarrassed and humiliated that PFC Blacketer had seen her naked and that she began to cry. Private A stated that her roommates began to "interrogate" her about what happened the previous evening between her and appellant. Private A didn't want to tell, so she told them nothing happened. Private A testified that she began thinking about why she wasn't going to tell what happened. She was afraid that she would get into trouble for underage drinking and would not be permitted to go before the Soldier of the Quarter Board and compete for early promotion. In fact, Private A did subsequently receive nonjudicial punishment under Article 15, UCMJ, for underage drinking after she reported this incident, and did not appear before the Soldier of the Quarter Board.

Private A testified that after SPC Poret left the room, PFC Roberson continued to "prod" her, and that PVT A "finally told her" what happened. Later that morning, PVT A repeated her story to SPC Poret and later to PFC Blacketer. After being encouraged by them to report the incident to her chain of command, PVT A told her squad leader at noon and her company commander at 1400 hours that same day. These are the five hearsay statements, admitted by the military judge for the truth of the matters stated therein under Mil.R.Evid. 803(1) and (2), that

appellant challenges in his second assigned error.

Late in the evening of 5 August 1996, after learning of the alleged assault on PVT A by appellant the night before, a second female soldier, PVT R, made sexual assault allegations against appellant. In a sworn statement, dated 5 August 1996, PVT R stated that in June or July 1996, she walked appellant to his barracks room because he had been drinking, and then she went to her own room in the same building. Private R stated that about ten minutes later appellant came into her room, pushed her down onto her bed, exposed his penis, and placed her hand on it. She struggled with him and forced him out the door. Two of her roommates were present at the time, but apparently didn't see anything inappropriate.

Charges related to PVT A's allegations, but not PVT R's allegations, were preferred against appellant on 23 August 1996 and referred to a general court-martial on 5 September 1996. Prior to trial, the government provided written notice under Mil.R.Evid. 413 of its intent to offer PVT R's allegation of a similar sexual assault by appellant in June or July 1996.

At trial, defense counsel contested the admissibility of PVT R's testimony. The trial counsel argued that it was admissible under Mil.R.Evid. 413, 404(b), and 403, because its probative value significantly outweighed its prejudicial effect. Defense counsel countered that there was insufficient evidence that PVT R's allegations were true. Defense counsel argued that under a Mil.R.Evid. 403 analysis any probative value would be substantially outweighed by unfair prejudice to appellant and confusion to the finder of fact by requiring a separate trial within a trial.

The military judge stated that the issue of "unfair prejudice" under Mil.R.Evid. 403 had been "trumped" by Mil.R.Evid. 413. The military judge concluded, "[T]he plain words of Rule 413 and, in particularly (sic), in subparagraph (a) of Rule 413 do make it fairly clear that if a matter is relevant, and it does seem to me that it is relevant, if, in fact, it's being offered to rebut a mistake of fact [defense]. If the matter is relevant [then] the evidence of another offense or offenses of

sexual assault is admissible." The military judge permitted PVT R's testimony under Mil.R.Evid. 413 without applying a Mil. R.Evid. 403 balancing test. During the trial, PVT R's first sergeant and one of her roommates testified that PVT R was not a truthful person. No one testified that PVT R was a truthful person.

## Standard of Review

■ The legal interpretation of a rule of evidence is a conclusion of law, which we review under a de novo standard. *United States v. Ayala,* 43 M.J. 296, 298 (1995); *United States v. Guardia,* 135 F.3d 1326, 1329 (10th Cir.1998); 2 S. Childress & M. Davis, *Federal Standards of Review* § 11.02 (2d ed.1992). Our standard of review for a military judge's decision to admit hearsay evidence is abuse of discretion. *United States v. Hyder,* 47 M.J. 46, 48 (1997).

## Military Rule of Evidence 413

■ On 13 September 1994, Congress enacted Federal Rules of Evidence 413 and 414, with an effective date of 9 July 1995. Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320935, 108 Stat. 1796, 2135–37 (1994). Under Mil.R.Evid. 1102, these two federal rules automatically became military rules of evidence applicable to trial by courts-martial 180 days thereafter in January 1996.[1] The version of Mil.R.Evid. 413 applicable to appellant's trial in September–November 1996 was the federal rule passed by Congress, pending preparation and promulgation of a military specific rule.

Military Rule of Evidence 413(a) at the time of appellant's court-martial provided, "(a) In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault *is admissible,* and may be considered for its bearing *on any matter to which it is relevant* " (emphasis added).

The constitutionality of Federal Rules of Evidence 413 and 414 (a similar rule providing for admissibility of prior child molestation evidence), and their military counterparts, has been a matter of great concern in the legal community. *See United States v. Enjady,* 134 F.3d 1427, 1430 n. 1 (10th Cir.), *cert. denied* — U.S. ——, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998); *United States v. Hughes,* 48 M.J. 700, 730 (A.F.Ct.Crim.App. 1998); *United States v. Wright,* 48 M.J. 896, 900 n. 2 (A.F.Ct.Crim.App.1998); and law review articles cited therein. When Congress added these rules as a last minute amendment to the Violent Crime Control and Law Enforcement Act of 1994,[2] they completely bypassed the normally exhaustive procedures previously established by Congress for amending the Federal Rules of Evidence. *See* Rules Enabling Act, codified at 28 U.S.C. §§ 2071–2077 (1994). Recognizing this, Congress provided that the rules could be reconsidered based upon a timely objection by the Judicial Conference of the United States [hereinafter Judicial Conference].[3] The Report of the Judicial Conference on these new rules strongly urged Congress to revoke them because of near unanimous concerns about their constitution-

---

1. Mil.R.Evid. 1102, *Manual for Courts–Martial, United States* (1995 ed.) [hereinafter *MCM* ]. In 1998 this rule was amended to give the President 18 months rather than 180 days to modify the applicability of a new federal rule of evidence to the military. The President did not promulgate his version of Mil.R.Evid. 413 and 414 until 27 May 1998. Executive Order 13086, *reprinted in* app. 25, *MCM* (1998 ed.), at A25–36. However, the President's version of Mil.R.Evid. 413 is nearly identical to the federal rule and is different in no manner that is material to the Mil. R.Evid. 403 balancing test issue in this case. *See MCM* (1998 ed.), app. 22, Mil.R.Evid. 413 analysis, at A22–36.

2. For a more detailed discussion of the history behind the enactment of these rules and the

reaction to them, see 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* 673–77 (7th ed.1998) [hereinafter *Federal Rules* ] and Stephen A. Saltzburg et al., *Military Rules of Evidence Manual* 615–18 (4th ed.1997) [hereinafter *Military Rules* ].

3. The Judicial Conference meets annually at the summons of the Chief Justice of the United States Supreme Court to conduct a variety of federal judicial business, including recommending to Congress changes to the Federal Rules of Evidence. Membership of the Judicial Conference includes the chief judge of each judicial circuit, a district court judge from each circuit, and the chief judge of the Court of International Trade. *See* 28 U.S.C. § 331 (1996).

ality as written.[4] Congress rejected the recommendations of the Judicial Conference.

In the few jurisdictions that have addressed this issue, appellate courts have uniformly held that their constitutional concerns with Rules 413 and 414 are satisfied by a proper application of the Rule 403 balancing test by the trial judge. *See United States v. Mound*, 149 F.3d 799, 800–01, *en banc denied*, 157 F.3d 1153 (8th Cir.1998) (Rule 413); *United States v. Castillo*, 140 F.3d 874, 882 (10th Cir.1998) (Rule 414); *Guardia*, 135 F.3d at 1329 (Rule 413); *United States v. Eagle*, 137 F.3d 1011, 1016 (8th Cir.1998) (Rules 413 and 414); *Enjady*, 134 F.3d at 1433 (Rule 413); *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997) (Rule 414); *United States v. Sumner*, 119 F.3d 658, 661–62 (8th Cir.1997) (Rule 414); *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997) (Rule 414); *United States v. Larson*, 112 F.3d 600, 604–05 (2nd Cir.1997) (Rule 414); *Hughes*, 48 M.J. at 716 (Rule 414); and *Wright*, 48 M.J. at 899–901 (Rule 413). No appellate court has upheld the admission of relevant evidence under Rule 413 or 414 when the trial judge did not perform a Rule 403 balancing test.

As noted in the Judicial Conference Report, without a Rule 403 balancing test, these new rules significantly increase the danger of convicting an accused for his past, uncharged behavior or for simply being a bad person, in violation of longstanding fundamental principles of American jurisprudence. 1 *Federal Rules* at 679. Such propensity evidence is relevant, but "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

The military judge in appellant's case applied Mil.R.Evid. 413 literally, holding that the evidence of the uncharged sexual assault on PVT R was admissible because it was relevant to appellant's possible mistake of fact as to PVT A's consent to sexual contact.

If such a literal reading were the correct analytical approach, then by similar analysis all relevant evidence could be admissible under Mil.R.Evid. 402, without a balancing test, because that rule also states that "[a]ll relevant evidence is admissible" and does not specifically reference Mil.R.Evid. 403. *See* Mil.R.Evid. 402; *Guardia*, 135 F.3d at 1329; *Sumner*, 119 F.3d at 661–62.

Although not available to the military judge at the time of appellant's trial, we note that the analysis to Mil.R.Evid. 413 and 414 expressly states the drafters' intent that military courts apply the Mil.R.Evid. 403 balancing test to such evidence. *MCM* (1998 ed.), app. 22, Mil.R.Evid. 413 and 414 analysis, at A22–36.

■ Considering all of the above, we hold that the military judge erred as a matter of law when he admitted uncharged propensity evidence under Mil.R.Evid. 413 without first performing the balancing test required by Mil.R.Evid. 403. We further hold that, in the Army, a military judge is required to conduct a Mil.R.Evid. 403 balancing test prior to admitting evidence of similar crimes in sexual assault cases under Mil.R.Evid. 413 or evidence of similar crimes in child molestation cases under Mil.R.Evid. 414.

### Present Sense Impression Hearsay Exception

■ The present sense impression exception permits the admission of a hearsay statement describing or explaining an event or condition made while the declarant "was perceiving the event or condition or *immediately thereafter.*" Mil.R.Evid. 803(1) (emphasis added). The critical element is that the statement be contemporaneous to the event so that the declarant does not have time to reflect upon what happened, or the consequences thereof, and to modify her statement. *See United States v. Brown*, 48 M.J. 578, 583–84 (Army Ct.Crim.App.1998); *Military Rules* at 942; and 3 *Federal Rules* at 1649–50.

4. *See Report of the Judicial Conference on the Admission of Character Evidence in Certain Sexual Misconduct Cases* [hereinafter Judicial Conference Report], dated 9 February 1995, 159 F.R.D. 51–57 (1995), *reprinted in* 1 *Federal Rules* at 678–83.

Private A testified that she did not wake her roommates to tell them what happened after appellant left. Instead, she lay in bed and thought about the incident and the impact of her own misconduct on her upcoming promotion possibilities. She concluded that she would not report appellant's actions because she was afraid of being punished for underage drinking. We find that the combination of PVT A's night's sleep, her reflection about what happened and the possible adverse consequences to her of reporting it, and her interrogation by her roommates the next day defeats the guarantees of trustworthiness contemplated by the contemporaneous requirement of the present sense impression exception. UCMJ art. 66(c); Mil. R.Evid. 803(1). We hold that the military judge clearly abused his discretion in admitting the hearsay testimony of five witnesses under the present sense impression exception to the hearsay rule. Mil.R.Evid. 803(1).

**Excited Utterance Hearsay Exception**

The excited utterance exception permits the admission of a hearsay statement relating to a *"startling* event or condition made while the declarant *was under the stress of excitement cause[d] by the event or* condition." Mil.R.Evid. 803(2) (emphasis added). The critical element is that the statement is made while still under a continuous excitement caused by the "startling" event or condition. Such statements are considered reliable because they are made before the initial excitement and associated spontaneity passes, thereby reducing the opportunity for reflective thought by the declarant. *See United States v. Fink,* 32 M.J. 987, 990 (A.C.M.R.1991); *Military Rules* at 943–45; and 3 *Federal Rules* at 1651–54. "The guarantee of trustworthiness of an excited utterance is that the statement was made while the declarant *was still* in a state of nervous excitement caused by the startling event." *United States v. Chandler,* 39 M.J. 119, 123 (C.M.A.1994) (emphasis added).

There is a difference between the stress or excitement caused by the original event and that caused by the trauma of having to retell what happened after initially calming down. Only the former is admissible as an excited utterance. "[T]he basis of the excited utterance exception is that the speaker is under the fresh emotional impact of a startling event, not that the speaker relives her emotions when later telling about the event." *United States v. Barrick,* 41 M.J. 696, 699 (A.F.Ct.Crim.App.1995).

In this case, PVT A was initially distraught after appellant left and she lay in her bed crying and thinking about what happened. Private A testified that she eventually calmed down and went to sleep. When she awoke the next morning, she was not distraught initially. Private A testified that she was subsequently embarrassed and humiliated when her roommates teased her about PFC Blacketer seeing her naked the night before. Private A continued to deny that anything had happened, and only told her story after her roommates "interrogated" her.

We find as fact that after the incident and prior to her declarations, PVT A engaged in reflective thought, calmed down from the initial stress of the event, and then slept. She spoke the next morning only in response to intense questioning from her roommates. UCMJ art. 66(c). Under these facts, the military judge clearly abused his discretion in admitting the hearsay testimony of five witnesses under the excited utterance exception to the hearsay rule. Mil.R.Evid. 803(2).

**Decision**

Considering the previously discussed errors, the record as a whole, and the rape charge and specification, we are not satisfied that these errors were harmless and that the findings of guilty are otherwise correct in law and fact. UCMJ art. 66(c). We find that these errors materially prejudiced the substantial right of the appellant to a fair trial on the rape allegation. UCMJ art. 59(a). We further find that these errors did not affect the findings of guilty related to the false swearing charge and specification.

The findings of guilty of Charge I and its Specification and the sentence are set aside. The remaining findings of guilty are affirmed. The same or a different convening authority may order a rehearing on Charge I and its Specification and the sentence. If the

convening authority determines that a rehearing on Charge I and its Specification is impracticable, he may dismiss that charge and specification and order a rehearing on the sentence only. If the convening authority determines that a rehearing on the sentence likewise is impracticable, he may approve a sentence of no punishment.

Senior Judge TOOMEY and Judge NOVAK concur.