UNITED STATES

v.

Dennis S. McDONALD, Hospital Corpsman First Class (E–6), U.S. Navy.

NMCM 98 02175.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 18 Feb. 1998.

Decided 31 March 2000.

LT Mari–Rae Sopper, JAGC, USNR, Appellate Defense Counsel.

LCDR Philip Sundel, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Chief Judge, TROIDL, Senior Judge, and ANDERSON, Appellate Military Judge.

DeCICCO, Chief Judge:

The appellant was tried by a general court-martial, military judge alone, in Mayport, Florida. He pleaded guilty to sodomy with a child under the age of 16 years and to committing an indecent act with the same child on the same date in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1994). Contrary to his pleas, he was convicted of sodomy by force and without the consent of the victim and of a second indecent act with the same child but on a different date in violation of the same articles. He was found not guilty of taking indecent liberties with several minor females and of attempted rape. The military judge sentenced him to be confined for 15 years, to forfeit all pay and allowances, to be reduced to pay grade E–1, and to be discharged with a dishonorable discharge. The convening authority approved the sentence and, as an act of clemency, suspended all confinement in excess of nine years.

On appeal, the appellant raises four assignments of error. First, he asserts that the military judge abused his discretion by admitting evidence of similar crimes under Military Rules of Evidence [Mil.R.Evid.] 413 and 414 without first applying a Mil.R.Evid. 403 balancing test; second, that the application of Mil.R.Evid. 413 and 414 denied him his right to due process; third, that the military judge committed prejudicial error by denying the appellant his right to confrontation of witnesses under the Sixth Amendment when he allowed the victim's father to testify in aggravation by telephone over defense objection; and fourth, that the sentence is inappropriately severe. Having reviewed the record of trial, the assignments of error, and the Government's response, we have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 59(a) and 866(c).

## The Admission of Mil.R.Evid. 413 and 414 Evidence and Mil.R.Evid. 403 Balancing

The appellant was charged with the attempted rape of DM, a 15–year–old female friend of his daughters, forcible sodomy with her, and of committing two indecent acts upon her on separate occasions by lying on top of her and simulating sexual intercourse, and by inserting his finger into her vagina. He was also charged with taking indecent liberties with several minor females by commenting on the size of their breasts. After the prosecution provided notice to the defense of its intent to introduce evidence of similar crimes under Mil.R.Evid. 413 and 414, the appellant moved at trial to prohibit the prosecution from introducing such evidence. Appellate Exhibit VI. He argued that such evidence was unduly prejudicial and violated Constitutional due process.

The proffered evidence consisted of the testimony of JH, the niece of the appellant's former spouse. She would testify that about 15–16 years before the court-martial, when she was about 11 years-old, the appellant placed his hand on her breast on one occasion, and later placed her hand on his penis on another occasion. After reviewing the

briefs of counsel and hearing oral argument on the motion, the military judge ruled the proffered evidence to be within the rule of admissibility contained in Mil.R.Evid. 413 and 414, and denied the defense's motion. Record at 77.

At trial, JH testified substantially as summarized above, and the appellant was convicted, contrary to his pleas, of sodomy by force and without the consent of DM and of committing the indecent act of lying on top of DM and simulating sexual intercourse.

> Mil.R.Evid. 413 provides, in pertinent part:
> In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant.

Mil.R.Evid. 414 contains a similar provision for the admission of evidence of other crimes in child molestation cases. Federal Rules of Evidence 413 and 414, upon which the Military Rules are based, were passed by Congress to lower the obstacles to propensity evidence concerning sexually related crimes. The purpose was to assist the finder of fact in assessing credibility in sexual assault and child molestation cases, and to assess the accused's criminal propensities in light of his past conduct. *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir.1998), *cert. denied*, 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir.1998), *cert. denied*, 525 U.S. 1089, 119 S.Ct. 842, 142 L.Ed.2d 697 (1999); *United States v. Myers*, 51 M.J. 570, 580 n. 19 (N.M.Ct.Crim.App.1999).

 When determining the admissibility of evidence under Mil.R.Evid. 413 or 414, the military judge must apply the balancing test contained in Mil.R.Evid. 403. *Myers*, 51 M.J. at 580 n. 20; *United States v. Green*, 50 M.J. 835, 838–39 (Army Ct.Crim.App.1999).[1]

The military judge is afforded wide discretion in applying Mil.R.Evid. 403 and appellate courts ordinarily exercise great restraint in reviewing such decisions. *United States v. Harris*, 46 M.J. 221, 225 (1997). When applying this test, it is preferable for the military judge to articulate the Mil.R.Evid. 403 findings on the record. However, the military judge is not required to do so. *United States v. Acton*, 38 M.J. 330, 334 (C.M.A. 1993); *see also United States v. Braithwaite*, 709 F.2d 1450 (11th Cir.1983); *United States v. Potter*, 616 F.2d 384 (9th Cir.1979). Military judges are presumed to know the law and, absent evidence to the contrary, we will presume that they acted according to it. *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A.1994).

 The admissibility of JH's testimony was extensively litigated at trial. The briefs of both parties (Appellate Exhibits VI and VII) contained thorough analyses of Mil. R.Evid. 403 balancing. Additionally, the oral arguments of counsel to the military judge also discussed it. Record at 71, 75. From the record before us, we have no doubt that the military judge in this case was aware of the need to apply Mil.R.Evid. 403 balancing and that he did so even though he did not specifically articulate his findings on the record. He was not required to specifically articulate his reasoning on the record and, absent evidence to the contrary, the law affords him the presumption that he correctly applied the law.[2]

The proffered evidence also complied with the five-part test we enunciated in *Myers* for use in determining the admissibility of such evidence. *Myers*, 51 M.J. at 580–81 n. 20. The appellant was charged with offenses that constituted sexual assaults and child molestation. Second, the proffered evidence was evidence of the appellant's commission of sexual assault and child molestation. Third, the evidence was relevant and the factfinder could reasonably conclude that the appellant

---

1. Moreover, this appears to be the intent of the drafters of the rules. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), App. 22, Mil. R.Evid. 413 and 414 analysis at A22–36.

2. Nonetheless, military judges should place specific balancing findings on the record so that we

can determine how Mil.R.Evid. 403 was applied. Had the briefs and argument of counsel not made clear in this case that the balancing was considered, we would be more inclined to find error. *See Green*, 50 M.J. at 839.

had committed the prior sexual assault and child molestation. Fourth, the probative value of the evidence substantially outweighed the prejudicial impact because it illustrated the appellant's propensity to engage in non-consensual sexual conduct with minor females, particularly in situations when the appellant was in a custodial role with the minor female. And fifth, proper disclosure and notice were provided in a timely manner. Therefore, the proffered evidence was admissible.

Moreover, even if we had concluded that admission of the proffered evidence was erroneous, we would find it harmless beyond a reasonable doubt because of the overwhelming evidence of the appellant's guilt. After the appellant pleaded guilty to committing sodomy without force upon DM and to the commission of an indecent act on DM, the issue of force and lack of consent and the resolution of other charges were before the factfinder. DM's testimony on the issue of force and lack of consent to the sodomy was clear and credible. DM testified she told the appellant to stop, and this testimony was corroborated by the testimony of one of the appellant's daughters who overheard DM's protests. The appellant's other daughter corroborated the circumstances concerning the contested indecent act by confirming that the appellant had locked himself in a room with DM, just as DM had testified, and that the daughter had to force open the door with a screwdriver. The prosecution also presented testimony from other witnesses that the appellant admitted that he had "screwed up big time" and "attacked" and "molested" DM. Record at 228, 233. While the defense presented no evidence on the findings, as was its right, there was nothing presented to impeach, rebut, or cast doubt on DM's testimony on the offenses of which the appellant was convicted either during cross-examination or in the defense case. Therefore, we find no merit in this assignment of error.

## Due Process Violation

The appellant next argues that the application of Mil.R.Evid. 413 and 414 violates Constitutional due process. However, a review of the pertinent appellate decisions indicates that the courts have uniformly held that such Constitutional concerns with Mil.R.Evid. 413 and 414 are satisfied by the proper application of the Mil.R.Evid. 403 balancing test. *Myers*, 51 M.J. at 580 n. 20; *Green*, 50 M.J. at 839 (and cases cited therein).

In this case, we have found that the military judge applied the Mil.R.Evid. 403 balancing test from the circumstances at trial. Therefore, we decline to find a due process violation in the application of Mil.R.Evid. 413 and 414 in this case.

## Telephonic Testimony at the Sentencing Hearing

Just before the presentation of evidence regarding the contested charges, the trial counsel informed the military judge that the prosecution intended on calling DM's father, a Sergeant Major on active duty in the U.S. Army, to testify during the presentence hearing. Trial counsel informed the court that the witness was at Fort Stewart, Georgia, and was deploying to the Middle East. He was due to report to the terminal that night at midnight for a departure flight at 0600 the next morning. Trial counsel indicated that the prosecution was willing to take the witness's testimony by telephone, but the defense objected to that procedure. In the alternative, the trial counsel requested either a deposition or moving the trial to Fort Stewart to take his testimony that evening.

The defense objected to taking the witness's testimony by telephone based on the Sixth Amendment right to confrontation. The defense also opposed a deposition because of the delay it would cause. The defense was willing to enter into a stipulation of expected testimony to resolve the matter.

Trial counsel responded that Fort Stewart was only an hour and a half away by car, and that as the father of the victim, the witness should be heard to describe the impact the appellant's actions had on DM. The military judge noted that numerous witnesses were standing by to testify, and they would be inconvenienced if hours of travel time were to intervene. Trial counsel persisted in seeking a deposition or moving the trial to Fort Stewart that evening for in-person testimony. The prosecution did not want to stipulate to the testimony of the witness. The military

judge took the matter under advisement. Record at 96–102.

The trial on the merits proceeded with opening statements and the testimony of DM. As soon as DM left the witness stand, trial counsel informed the military judge that the Sergeant Major was on the telephone and had confirmed he had to "pull chocks" at 0600 the following morning. The prosecution persisted in its requests for testimony by telephone, and failing that, to move the trial to Fort Stewart. The defense repeated its objection to telephonic testimony and its willingness to stipulate. The military judge stated that the travel time to Fort Stewart was closer to two or two and a half hours. He concluded that it would therefore be impracticable to move the court or send personnel to Fort Stewart for a deposition. He then granted the prosecution's request for testimony by telephone. Record at 167. The prosecution then presented the rest of its case on the contested charges. The defense rested without presenting evidence, and the military judge announced his findings.

The only evidence presented during the prosecution's case in the sentencing hearing was the telephonic testimony of DM's father. A telephone was placed in the courtroom near a microphone. The witness was sworn, indicated he was alone and that he had no papers in front of him. The questions from counsel and the responses of this witness are recorded verbatim in the record of trial. Record 263–274.

Although it was the prosecution's only sentencing evidence, the testimony of DM's father was very compelling. He testified that he had served in the Army for 26 years and was the Command Sergeant Major for the First Brigade in the Third Infantry Division at Fort Stewart. He was to depart for Kuwait at 0600 the following morning. He then described his relationship with DM, and that one of the hardest things he ever had to do was leave her at the time of this trial and report for his deployment. While crying, he stated that he was a warrior and a soldier and had to go. He said that since the incidents, DM is afraid and more withdrawn, she distrusts men of the appellant's age, her work at school and her sleep had been ad-versely affected, and she had lost friends. He added that he too had lost sleep over the matter. The defense was provided an opportunity for cross-examination, and it elicited only that DM and the appellant's daughter were still friends.

The appellant argues before us that the military judge erred by allowing the telephonic testimony from the victim's father over defense objection at the presentencing hearing. He continues to assert that his right to confrontation under the Sixth Amendment to the Constitution was violated during the sentencing proceeding. Initially, the Government conceded error and recommended that we reassess the sentence. Government Answer of 19 Nov. 1999 at 8. We then requested further briefing on the following questions:

> DOES THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT APPLY TO NONCAPITAL SENTENCING PROCEEDINGS?
>
> IF NOT, UNDER WHAT LEGAL PRECEDENT OR PRINCIPLE DID THE MILITARY JUDGE ERR IN ALLOWING A PROSECUTION WITNESS TO TESTIFY BY TELEPHONE OVER DEFENSE OBJECTION DURING THE SENTENCING PROCEEDING? *SEE* RULE FOR COURTS–MARTIAL 1001(e).

In a supplemental brief, the appellant acknowledges that Federal case law indicates there is no right to confront witnesses during noncapital sentencing hearings, but asserts that a different result is warranted in light of the military's unique sentencing procedures. The appellant also argues that the recent decision in *United States v. George*, 52 M.J. 259 (2000), supports his position for overturning the appellant's sentence.

The Government changed its position in its supplemental brief, and no longer concedes error. It also argues that *George* does not stand for the proposition that the Confrontation Clause applies to military sentencing hearings and that the appellant reads the holding of the case too broadly.

The Confrontation Clause of the Sixth Amendment "guarantees the defendant a

face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The basic purpose of the Confrontation Clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The Supreme Court has created a narrow exception to a criminal defendant's right to face-to-face confrontation to further an important public policy and the necessities of the case require the same. *Craig*, 497 U.S. at 850, 110 S.Ct. 3157.

In *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), the Supreme Court discussed the right of confrontation of witnesses in the context where a prosecutor made an unsworn statement to the trial court during a sentencing hearing. The defendant argued on appeal that consideration of the prosecutor's remarks by the trial court denied him his right to confrontation. The Court stated:

> [O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or "out of court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.

*Williams*, 358 U.S. at 584, 79 S.Ct. 421. The Court then went on to hold that the prosecutor's statement, which was not subject to cross-examination, did not deprive the defendant of fundamental fairness or of any right to confrontation or cross-examination. *Id.*

Several of the Courts of Appeals have held specifically that the Constitutional right to confrontation of witnesses does not apply during non-capital sentencing proceedings. *United States v. Morrow*, 177 F.3d 272, 304 (5th Cir.1999); *United States v. Wise*, 976 F.2d 393, 398–404 (8th Cir.1992)(en banc); *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir.1992)(en banc); *United States v. Helton*, 975 F.2d 430, 434 (7th Cir.1992); *United States v. Goldfaden*, 959 F.2d 1324, 1330 (5th Cir.1992); *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir.1990).[3]

The rationale of such holdings is that once the guilt of the accused has been determined, courts have afforded sentencing judges wide discretion in the sources and types of evidence used to determine the kind and extent of punishment. As long as the evidence produced during the sentencing proceeding has sufficient indicia of reliability and is substantially significant for the sentencing authority to consider in fashioning an appropriate sentence, it may be introduced.

■ As a general proposition, the Confrontation Clause applies in trials by court-martial. *United States v. Gleason*, 43 M.J. 69, 73 (1995); *United States v. Stombaugh*, 40 M.J. 208, 212 (C.M.A.1994); *United States v. Jacoby*, 11 C.M.A. 428, 29 C.M.R. 244 (1960). However, we have found no military decisions discussing whether the Confrontation Clause extends to military presentencing proceedings, or whether testimony can be taken over the telephone during such proceedings over defense objection.[4]

■ Based on the extensive Federal precedent cited above, we are convinced that the Confrontation Clause does not apply to post-conviction, non-capital, presentence proceedings, and that it does not prohibit telephonic testimony during such proceedings. We must then look to the Uniform Code of Military Justice, the Military Rules of Evidence and the Rules for Courts–Martial for guidance. While the Code and the Military Rules of Evidence do not address the issue, Rule for Courts–Martial 1001(e)(1) provides:

---

**3.** *See also United States v. Beeson*, 1999 WL 90547, 168 F.3d 502 (9th Cir.1999); *United States v. Pewenofkit*, 1999 WL 169429, 1999 U.S.App. Lexis 5766 (10th Cir.1999); and *United States v. Garavaglia*, 1999 WL 220125, 1999 U.S.App. Lexis 6390 (6th Cir.1999).

**4.** In *United States v. Morrison*, 13 M.J. 649 (N.M.C.M.R.1982), this court held that a military judge did not err by taking telephonic testimony on an interlocutory matter during an Article 39(a) session.

"During the presentence proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses." R.C.M. 1001(e)(1) affords the military judge the discretion to determine whether the presence of witnesses is required in presentence proceedings. By doing so, it parallels the practice in the other Federal courts by allowing different forms of evidence on sentencing, other than the personal appearance of witnesses.

In the case before us, the prosecution's witness in aggravation testified by telephone. He was properly identified and placed under oath. He had relevant testimony to offer,[5] and he was subject to cross-examination. He verified that he was alone in the room and had no papers in front of him. The circumstances of his imminent deployment abroad were fully described for the record.[6] The sole basis for the defense objection to this method of testimony was an alleged denial of the right to confrontation because the witness was not physically present in the courtroom where his demeanor could be observed.

■ We hold that the military judge in this case did not abuse his discretion under R.C.M. 1001(e)(1) in overruling the defense objection to the telephonic testimony of the victim's father where: (i) the testimony was used during the sentencing proceeding; (ii) it had sufficient indicia of reliability; (iii) it provided relevant information (in this case, victim and witness impact information), and (iv) the use of the telephone was necessary due to the witness' imminent deployment abroad the following day. We have found no authority to the contrary and nothing in the Constitution, UCMJ, or Manual for Courts-Martial that military personnel enjoy greater rights to confrontation of witnesses than do civilians. Our holding does not extend to testimony taken during the findings portion of the court-martial, or to situations where telephonic testimony is utilized over defense objection in sentencing solely as a matter of convenience, cost effectiveness, or other less compelling reasons.[7]

As a final point, we distinguish our recent holding in *United States v. Shabazz*, 52 M.J. 585 (N.M.Ct.Crim.App.1999), where a prosecution witness testified on the merits of the case by video teleconferencing and was prompted while answering questions on cross-examination. In the case at bar, the testimony of DM's father was taken during the sentencing proceeding and there were sufficient guarantees to ensure he testified on his own.

### Sentence Appropriateness

■ Undoubtedly, the appellant's sentence to a dishonorable discharge and confinement for 15 years (with confinement in excess of nine years suspended) was severe. However, his crimes were likewise severe and deserving of harsh punishment.[8] He was convicted of committing sodomy by force upon a 15-year-old girl who was spending the night at his home with his daughters. He was also convicted of two separate indecent acts upon her. We have carefully considered the entire record, including the appellant's military record, the fact that he pleaded guilty to some of the offenses and his expressed remorse, but nonetheless find the sentence, as approved by the convening authority, not to be inappropriately severe.

### Disposition

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge TROIDL and Judge ANDERSON concur.

---

5. R.C.M. 1001(b)(4) allows for the introduction of evidence concerning the impact of the offense on the victim.

6. DM's father had actually been present at the start of the trial on 16 February 1998 when he was recalled to his duty station after his unit was alerted of its imminent deployment. Record at 266.

7. We also find no merit in the appellant's argument that the holding in *George, supra,* controls this issue.

8. The maximum punishment for forcible sodomy included confinement for life. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 51e(1).