## UNITED STATES

v.

## Senior Airman Kelly S. BARRICK, FR386–78–7397, United States Air Force.

## ACM 30623.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 14, April 1993.

Decided 10 Jan. 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Major George F. May, and Captain Arthur E. Jackman, Jr.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Major Barnard N. Madsen.

Before HEIMBURG, RAICHLE, and GAMBOA, Appellate Military Judges.

## OPINION OF THE COURT

HEIMBURG, Senior Judge:

A general court-martial sitting with enlisted members convicted Senior Airman (SrA) Barrick of the rape of another senior airman. Article 120, UCMJ, 10 U.S.C. § 920 (1988). SrA Barrick pled guilty to adultery, Article 134, UCMJ, 10 U.S.C. 934, but the military judge dismissed that charge as multiplicious with the rape charge after the members returned findings. The approved sentence is a bad-conduct discharge, confinement for 12 months, forfeiture of $200 pay per month for 12 months, and reduction to E–1.

Senior Airman Barrick asserts on appeal that the military judge erred in two respects: he permitted two persons to testify concerning statements the victim made the day following the incident as "excited utterances" under MIL.R.EVID. 803(2); and he failed to instruct on the defense of mistake of fact. We agree that the statements were not excited utterances, but, finding their erroneous admission non-prejudicial, we affirm.

## Facts

The appellant and the victim, SrA [G], were both serving 180 days temporary duty (TDY) at a small site in Saudi Arabia. Each was chosen to participate with 12 others in a "morale trip" to Bahrain. This three-day trip consisted of a five hour bus ride to a military-operated hotel in Saudi Arabia near the border of Bahrain, two nights at the hotel, one day at an island in Bahrain, and a five hour bus ride back to their duty location. Only during their day in Bahrain were the group members permitted to drink alcoholic beverages.

SrA G testified she knew the appellant from seeing him at work, but they had no social relationship, either before or during the morale trip. They did not sit together during the bus rides and they spoke briefly only a couple of times during the trip. Once, while the group was in Bahrain, the appellant "grabbed [SrA G's] butt on a bet with this Saudi gentleman he was talking to." Finding herself next to the appellant on the boat trip back from the island, SrA G engaged him in conversation, asking if he was married. The appellant responded that he "was not very well endowed but he could please me with his tongue." SrA G laughed and walked away to stand next to another male airman she knew.

SrA G consumed a large amount of alcoholic beverages in Bahrain, as did many of the group, but she did not consider herself drunk when the group returned to the military hotel in Saudi Arabia and the "villa" she shared with one woman and 11 or 12 men, including the appellant. The villa consisted of five bedrooms, three bathrooms, a kitchen and a living area. The two women, SrA G and her friend "Trixy," shared one bedroom which had an adjoining bathroom, while the men shared the remaining rooms and bathrooms. That afternoon there was a lot of horseplay in the villa among members of the group. The appellant was not part of the horseplay, and apparently did not speak with SrA G after returning to the villa.

SrA G went to bed early because of a headache and was asleep when the appellant entered her room wearing only a towel. SrA G awoke with the appellant on top of her, with his penis in her vagina, telling her to "come alive." She had no idea how long he had been there. After "fifteen, thirty seconds" he ejaculated, got off her, threw her underwear on her chest and said, "Sorry. I've been drinking too much. I guess that's just a guy." When the appellant left her room, the clock showed it was approximately 1900. SrA G called for Trixy to come into the room and told her about the rape. She and Trixy talked about the events for an hour or two, but SrA G told no one else that night.

The next morning SrA G awoke at 0600, but stayed in her room until the group started the 5-hour return bus trip at 0700. Once back at her duty site, SrA G went directly to the villa occupied by Phil, a civilian man she had dated. Phil was asleep, but SrA G went into his villa and lay down next to him, crying. When Phil awoke, she told him she had been raped. Phil talked with SrA G for a couple of hours. He encouraged SrA G to report the rape to her first sergeant, Technical Sergeant (TSgt) [W]. TSgt W was out when they called, but returned the call and asked SrA G about the trip. SrA G began to cry, and told him she had been raped.

The military judge ruled that both Phil and TSgt W could testify as to what SrA G told them about the rape under the "excited utterance" exception to the hearsay rule. MIL.R.EVID. 803(2). The judge denied the defense counsel's request for a mistake of fact instruction which would have advised the members they must acquit if they found the appellant mistakenly believed SrA G consented to sexual intercourse.

## Excited Utterance

 As an exception to the hearsay rule, a military judge may admit an "excited utterance." MIL.R.EVID. 803(2). This exception "recognizes that statements made during a startling event or while under the stress of excitement, possess inherent reliability. The excitement and associated spontaneity remove an opportunity for calculation." S. Saltzburg, L. Schinasi, D. Schlueter, MILITARY RULES OF EVIDENCE MANUAL 793 (3d ed. 1991). Because of this assumption which underlies the exception, it is important that

the statement have been made under the stress of the excitement of the startling event, and the lapse of time is a relevant factor in admissibility, although not in itself dispositive. *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A.1987), *citing United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). A military judge's ruling admitting an excited utterance is reviewed by us for abuse of discretion. *United States v. Pearson*, 33 M.J. 913, 915 (A.F.C.M.R.1991).

In ruling that SrA G's description of the events to Phil and TSgt W were excited utterances, the military judge emphasized that SrA G "had no opportunity while on the bus to talk to anyone about the incident because the accused was present." He also found that SrA G "did not contemplate whether or not to report the event," a factor he considered "important because it tends to minimize concern that she used that time to make up some story." The military judge also found that SrA G's confusion and demeanor (very emotional and crying) while describing the event to Phil and TSgt W "show that she was describing a very emotional event while still under the influence of it."

We believe the military judge misapplied the standards for admissibility of an excited utterance to the facts of this case in two respects. First, contrary to the judge's findings, SrA G had time to reflect on the events. While the lapse of time is not dispositive, it is important here. SrA G reported the rape to Trixy immediately after it occurred, and talked with Trixy for up to two hours before falling asleep. She did not talk with Phil until more than 18 hours had passed, after a long bus ride during which she spoke to no one but thought considerably about what had happened. She described herself on the bus trip as being upset, angry, "degraded somehow." "I was angry at myself. I was trying to think what I had done, to see if I had done anything to warrant what had happened. And I was just upset in general; crying, moody; very moody." The source of her stress, she said, was "I had to sit on the same bus with the accused."

Second, the stress SrA G showed appears to have been the stress of recalling the events of the prior evening, not the stress caused by those events. While it is not always easy to distinguish between sources of a victim's emotions, it seems clear that the basis of the excited utterance exception is that the speaker is under the fresh emotional impact of a startling event, not that the speaker relives her emotions when later telling about that event. (*See Arnold*, 25 M.J. at 135, Everett, C.J., dissenting: "it would be bootstrapping to reason that excitement generated by telling about an event can give rise to the 'excited utterance' contemplated by MIL.R.EVID. 803(2).")

For these reasons, we conclude the military judge abused his discretion when he admitted the testimony of Phil and TSgt W about SrA G's statements concerning the rape. While the residual hearsay rule, MIL.R.EVID. 803(24), may have been another basis for admissibility of these statements, that rule requires notice to the opposing side and was not considered at trial. We may not now consider it. *See United States v. Jones*, 30 M.J. 127, 131 n. 3 (C.M.A.1990) (Cox, J. concurring). We thus turn to consider the impact of the error.

SrA G testified, subject to cross-examination, and her demeanor and credibility were before the court members. Thus the erroneous admission of SrA G's prior consistent statements to Phil and TSgt W does not bring into play the Confrontation Clause. *United States v. Deland*, 22 M.J. 70, 72 (C.M.A.1986), *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *United States v. LaMere*, 22 M.J. 61, 69 (C.M.A. 1986). We evaluate the impact of this error pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Most of Phil's and TSgt W's testimony remains admissible. They testified at length about SrA G's appearance, demeanor and emotions when she reported the rape. Trixy and the appellant's roommate at the hotel testified about the horseplay at the villa, the lack of interaction between SrA G and the appellant, and the appellant's uninvited entry into SrA G's room after SrA G

went to sleep. The appellant did not testify. At the most, the erroneously-admitted testimony of Phil and TSgt W was cumulative to Trixy's testimony concerning SrA G's immediate fresh complaint. We find the evidence of appellant's guilt overwhelming, and the impact of the error negligible. Article 59(a), UCMJ.

### Mistake of Fact Instruction

■ The appellant asserts the military judge erred in refusing to give an instruction to the members on mistake of fact—his mistaken belief that SrA G consented—as a defense to rape. The appellant did not testify, but that does not preclude an instruction on mistake of fact if other evidence raises the issue. *United States v. Sellers*, 33 M.J. 364, 368 (C.M.A.1991); *United States v. Peel*, 29 M.J. 235, 242 (C.M.A.1989), *cert. denied*, 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990); R.C.M. 916(b).

■ Unfortunately for the appellant, there is simply no evidence whatever which tends to show his state of mind and indicate his belief that he had received the consent of SrA G. *Cf. Sellers*, 33 M.J. at 368. Nor is there any evidence that SrA G said anything before the incident which could be construed as consent. The appellant pointed at trial to her comments *after* she awoke to find the appellant having sexual intercourse with her, but they do not support his defense, for by that time the offense was complete. *United States v. Traylor*, 40 M.J. 248, 249 (C.M.A. 1994); MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 45c(1)(b) (1984).

■ In arguing that the military judge should have given the instruction, the appellant points to evidence that there was "a lot of horseplay," including "acts of a sexual nature," and "a lot of drinking" before the appellant's acts. In addition, the appellant points to evidence of prior touchings of SrA G by the appellant and one incident in which SrA G grabbed her own breasts and complained about her bust size. None of this evidence supports the appellant's position. There is no evidence whatever that the appellant and SrA G were *together* involved in any of the horseplay or that SrA G consented to any of the touchings. The fact that SrA G

allowed the appellant to overhear a "complaint" about her breast size is certainly no invitation to sexual intercourse.

■ In addition, the appellant points to his guilty plea. As we observed at the outset, the appellant pleaded guilty to adultery based on the same acts which formed the basis of the rape charge. The prosecution is not permitted to use a plea of guilty to one offense as evidence of guilt of another, with the limited exception that a plea of guilty to a lesser-included offense may be used to establish elements of a greater offense. *United States v. Rivera*, 23 M.J. 89 (C.M.A.1986); *United States v. Wahnon*, 1 M.J. 144 (C.M.A.1975); *United States v. Caszatt*, 11 U.S.C.M.A. 705, 29 C.M.R. 521 (1960). Adultery is not a lesser-included offense of rape, but the Court of Military Appeals has held that a person may not be convicted of both rape and adultery based on the same act. *United States v. Hickson*, 22 M.J. 146 (C.M.A.1986). There is no element of consent in adultery. MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 62b (1984). *See Hickson*, 22 M.J. at 150–151. The appellant's plea of guilty to adultery, therefore, is not evidence of the appellant's belief that SrA G consented to his sexual advances, and the military judge could have not properly instructed the court members that it was.

### Conclusion

We conclude the findings and the sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge RAICHLE and Judge GAMBOA concur.