**Clyde SIMMONS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 05–CF–635.

District of Columbia Court of Appeals.

Argued Feb. 19, 2008.
Decided April 3, 2008.

O. Dean Sanderford, Public Defender Service, with whom James Klein, Samia Fam, and Winsome G. Gayle, Public Defender Service, were on the brief for appellant.

Stephen J. Spiegelhalter, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Valinda Jones, Roy W. McLeese, Mary B. McCord, and Nihar R. Mohanty, Assistant United States Attorneys, were on the brief, for appellee.

Before REID, GLICKMAN, and THOMPSON, Associate Judges.

GLICKMAN, Associate Judge:

Appellant Clyde Simmons was convicted of aggravated assault while armed, among other offenses, for shooting Edward Seymour. The identity of the shooter was the central disputed issue at trial; to prove it was appellant, the prosecution relied on circumstantial evidence. Appellant attempted to introduce, as an excited utterance, a putative eyewitness's hearsay statement identifying someone else as the shooter. The trial judge found the proffered hearsay admissible as an excited utterance but, nonetheless, excluded it because the declarant was unavailable to be cross-examined. Appellant contends this exclusionary ruling was erroneous and entitles him to a new trial. We agree, subject to confirmation on remand that appellant's proffer accurately described the hearsay statement in question.

## I.

Edward Seymour testified at trial that appellant owed him $1,500—money he had given appellant for a car that was never delivered to him. On the afternoon of January 29, 2004, Seymour confronted appellant at a shopping center in the 2400 block of Good Hope Road and demanded his money back. Appellant claimed not to be carrying any cash—as evidence, he emptied some of his pockets and allowed Seymour to pat him down—but said he could get $200 from home. Not trusting appellant to retrieve the money alone, Seymour turned away from him to ask a friend to drive them both to appellant's home. At that moment, Seymour testified, he was shot without warning in the back of the head. Appellant immediately fled from the scene. Although Seymour did not see who shot him, he believed it must have been appellant.

For reasons not explained in the record, no one who was with Seymour and appellant at the time of the shooting testified at trial. The government did call two other witnesses to the events surrounding the shooting, neither of whom actually saw what happened. Walter Jackson testified that he was around the corner when he heard a gunshot and saw appellant run away with a gun in his hand. Jackson said he and a second man (who did not appear at trial) chased appellant into an apartment building, where they lost sight of him. Detective Glenn Giardino, who also was in the vicinity, testified that he observed the chase. Giardino did not see either appellant or his pursuers holding a weapon. He then came upon Seymour lying wounded on the ground and called for an ambulance.

Taking the stand in his own defense, appellant admitted encountering Seymour that afternoon and offering to go home to get money to pay him. According to ap-

pellant, he asked his friend "Jay" to drive him there, at which point Seymour stepped between the two men, pushed them apart, and said, "You're going nowhere with Jay. If you're going somewhere, you're going with us." Next, Seymour told someone else (apparently one of Seymour's friends) to "get the gun away from him." Appellant did not see who had a weapon. Moments later, though, he heard a gunshot. Appellant did not know who fired it; fearing for his life, he did not stay to find out. As appellant fled, he was pursued by two individuals, one of whom was holding a "chrome object" of some kind. Appellant eluded them and sought shelter in a stranger's apartment in a nearby building, telling the occupant that someone was trying to kill him. Appellant denied shooting Seymour. He believed that one of Seymour's friends must have done so by accident.

Appellant's only other witness, through whom he sought to introduce the hearsay statement identifying somebody else as the shooter, was Evelyn Rucker. Ms. Rucker, who worked across the street from the 2400 block of Good Hope Road, testified that she was on her lunch break in a nearby McDonald's restaurant at the time the shooting took place. She was inside the McDonald's for only about fifteen minutes. While Rucker did not see or hear the shooting, she saw police cars and a crowd at the scene when she left the McDonald's to walk back to work. Crossing the street where the shooting occurred, Rucker noticed "an elderly gentlemen standing there and he was very upset." Rucker did not know the man but could tell he was upset from "the look on his face and the way he was acting." She asked him if he was okay. As Rucker began to testify that the man answered "No," the prosecutor objected.

At the bench, appellant's counsel explained that he intended to lay the founda-

tion for admission of the man's statements as excited utterances. The prosecutor expressed doubt that the necessary foundation could be laid through Rucker, inasmuch as she had not heard the shooting and, therefore, "would have no way of telling when this elderly gentleman, who presumably makes an excited utterance, saw or heard the shot." The judge responded that appellant's counsel would have to establish whether the declarant "was distressed under the excitement" of the shooting. The judge observed that if the statement came within the excited utterance exception to the hearsay rule, it would be admissible despite the declarant's unavailability.

The examination of the witness resumed. Rucker described the "elderly gentleman" as "pacing in one spot back and forth," "mumbling to himself," and acting "scared and upset." She started to testify that she "asked him was he okay, and he said no he wasn't okay, that the guy with the gun—," but she did not finish the sentence because the prosecutor objected again.

Outside the jury's presence, the judge requested a proffer of Rucker's testimony. Appellant's counsel answered that "she's going to state that this gentleman just started talking to her, she never met him, never seen him before, about the shooting and he's going to point out the actual person that did the shooting." The judge's initial reaction was that this was an identification rather than an excited utterance. He asked what the man said. Appellant's counsel responded: "He says, 'There goes the guy that just shot that young man

right there,' and then he points to the person. . . . He also indicated that he still has the gun." Later counsel added that the man "indicated that he just witnessed a shooting." Counsel intimated that Rucker could describe the person whom the bystander singled out; because that person was at the scene of the crime after the police had arrived, he could not have been appellant.

Following further discussion, the judge allowed the statements of Rucker's interlocutor to be presented under the hearsay exception for excited utterances, except for any statements identifying the shooter. Expressing concern over the man's uncertain reliability or capacity ("For all we know, this guy was a paranoid schizophrenic who was sitting there making stuff up"), and citing D.C.Code § 14–102 (2001), the judge ruled his statements of identification inadmissible because he was not available at trial for cross-examination.[1] Accordingly, the judge instructed appellant's counsel that Rucker "can talk about anything he said other than that's the shooter. . . . Anything else that he says comes in, but the identification does not because it's hearsay [and][h]e's not available for cross-examination. . . . You can ask her anything that would otherwise fall under the excited utterance exception to the hearsay rule. But as to the identification, that's inadmissible hearsay since the guy is not here to be cross-examined." As a result of this ruling, the jury never heard that the anonymous "elderly gentleman" had singled out somebody other than appellant as the person who shot Seymour.

1. In pertinent part, D.C.Code § 14–102(b) provides that "an identification of a person made after perceiving the person" is not hearsay, and is admissible as substantive evidence, "if the declarant testifies at the trial ... and is subject to cross-examination concerning the statement. . . ."

Appellant's counsel argued that excited utterance identifications are admissible wheth-er or not the declarant is available; as an example, counsel pointed to their frequent admission in domestic violence cases. Unpersuaded, the judge reasoned that such identifications are admitted in domestic violence cases "because all the parties know each other," which was "not the case here."

There is reason to think the jury found this a close case, even without Rucker's excluded testimony. Before it finally found appellant guilty, the jury deliberated for four days and sent three notes, one after receiving an anti-deadlock instruction, stating that it was unable to reach a unanimous verdict.

## II.

▮▮▮ Appellant argues that the trial judge committed reversible error by excluding the portion of the anonymous bystander's excited utterance that identified someone else as Seymour's assailant. The government rejoins that the hearsay did not qualify as an excited utterance; and that even if it did, its erroneous exclusion was harmless in light of the strength of the prosecution's case. Our review of a decision to admit or exclude a proffered out-of-court statement as an excited utterance is deferential, for the inquiry is fact-specific and committed in the first instance to the discretionary judgment of the trial judge.[2] We have said that we will reverse such a ruling "only if [it] is clearly erroneous."[3] A discretionary ruling founded on a mistake of law, however, is "by definition" erroneous.[4]

We hold that the judge did not abuse his discretion in finding the statement proffered by appellant to qualify as an excited utterance. We conclude that the judge erred as a matter of law, however, in barring the identification portion of that excited utterance because the declarant was not available for cross-examination. On the record before us, we cannot find the error harmless.

## A.

▮▮▮ The proponent of evidence offered as an excited utterance must show "(1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the remark."[5] We think the trial judge reasonably could find each of these three foundational requirements to have been met in this case; that the judge arguably could have evaluated the facts differently and found otherwise does not disentitle his decision to our deference on appeal.

As to the first factor, the shooting of Seymour in the head certainly was a serious enough occurrence to excite and shock an elderly bystander. Rucker described the man as being in a state of considerable distress—pacing back and forth, mumbling to himself, and looking and acting so patently "scared and upset" that she was moved to ask this total stranger whether he was "okay." This depiction sufficed to establish that the gentleman was in the requisite state of nervous excitement.[6]

**2.** *Odemns v. United States*, 901 A.2d 770, 776 (D.C.2006).

**3.** *Bryant v. United States*, 859 A.2d 1093, 1106 (D.C.2004) (quoting *Reyes–Contreras v. United States*, 719 A.2d 503, 505–06 (D.C.1998)).

**4.** *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *see also In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991) ("[A] trial court abuses its discretion when it rests

its conclusions on incorrect legal standards.") (citations omitted).

**5.** *Odemns*, 901 A.2d at 776 (quoting *Nicholson v. United States*, 368 A.2d 561, 564 (D.C. 1977)).

**6.** "When ... there is evidence that the declarant was highly distraught and in shock at the time the statement was uttered, then an adequate showing as to the first element is

The government disputes the causal linkage between the shooting and the declarant's state of nervous excitement—in particular, whether the record sufficiently indicates that the declarant actually witnessed the shooting himself. "Just as testifying witnesses must have personal knowledge of the subject of their testimony, hearsay declarants must have personal knowledge of what they assert in order for their declarations to be admissible." [7] Thus, the government is correct in stressing that "the party seeking to introduce [an excited utterance] is not relieved of the burden of demonstrating the declarant's personal knowledge of the event, a burden which naturally becomes more difficult to meet when the declarant is unknown." [8] So, as we explained in *Ginyard*, an anonymous speaker's comment about a shooting "cannot be found to have been an excited utterance ... without evidence that the unknown declarant witnessed the shooting." [9]

But this case is not like *Ginyard*, where the proponent of the hearsay "adduced no evidence of such personal knowledge." [10] Rucker came upon the declarant at the scene of the shooting only minutes after it happened. Before she was cut off by the prosecutor's objection, Rucker started to testify that the man connected his distress to that event ("[H]e said no he wasn't okay, that the guy with the gun—"). From the declarant's physical and temporal proximity to the shooting, his agitation, and his statement, it is reasonable to infer that the declarant actually observed the shooting, not that he merely heard about it afterward. Courts do not insist on more direct evidence of first-hand knowledge. [11] "Direct proof of observation is not neces-

---

made." *Alston v. United States*, 462 A.2d 1122, 1127 (D.C.1983) (citations omitted). *See, e.g., Reyes v. United States*, 933 A.2d 785, 790 (D.C.2007) (declarant described by witnesses as having been "very upset, highly agitated, scared and talking rapidly when he made the statements"); *Teasley v. United States*, 899 A.2d 124, 129 (D.C.2006) (declarant "spoke in an 'excited tone,' mumbled to himself, and didn't 'have the wherewithal' to provide his license plate number").

7. *Ginyard v. United States*, 816 A.2d 21, 40 (D.C.2003) (citations omitted).

8. *Ash v. Reilly*, 433 F.Supp.2d 37, 45 (D.D.C. 2006).

9. *Ginyard*, 816 A.2d at 40. By itself, of course, the fact that the declarant in this case was an anonymous bystander does not render his statement inadmissible as an excited utterance. "The key concern should not be the literal identity of the bystander, although such identity would be helpful to permit possible impeachment, but rather the position of the declarant with regard to the events and their impact upon him or her." 2 McCORMICK ON EVIDENCE § 272 n. 37 (6th ed.2006).

10. *Ginyard*, 816 A.2d at 40.

11. *See, e.g., McLaughlin v. Vinzant*, 522 F.2d 448, 451 (1st Cir.1975) (holding that despite lack of precise evidence as to declarant's opportunity to observe, the content of her statement and her presence in the vicinity of the shooting allowed inference that she witnessed the startling event); *People v. Gutierrez*, 78 Cal.App.4th 170, 178, 92 Cal.Rptr.2d 626 (2000) ("Although no direct evidence was introduced on the point, there was evidence from which it could be inferred the declarant had witnessed the robbery."); *People v. Green*, 884 P.2d 339, 342 (Colo.Ct.App.1994) ("[F]or hearsay to be admissible ... there must be sufficient direct or circumstantial evidence to allow the jury to infer that the declarant had the opportunity to observe the startling occurrence."); *State v. Wargo*, 255 Conn. 113, 763 A.2d 1, 11 (2000) ("[T]he state is not required to establish such personal observation by the declarant beyond any possible doubt. Rather, the question for the trial court is whether a reasonable inference may be drawn that the declarant had personal knowledge of the facts that are the subject of his or her statement."); *State v. Rawlings*, 402 N.W.2d 406, 409 (Iowa 1987) (unknown bystander's identification of defendant held admissible, as the "declarant's personal knowledge of the facts ... may be inferred from the utterance itself."); *Commonwealth v. Correa*, 437 Mass. 197, 770 N.E.2d 435, 440 (2002) (upholding admission of unknown bystander's statement identifying murderer by his first name, because the infer-

sary; if the circumstances appear consistent with opportunity by the declarant, the requirement is met. If there is doubt, the question should be for the jury." [12]

The judge had more than Rucker's abbreviated testimony, however; he also had defense counsel's proffer of what Rucker would have said the elderly gentleman told her. Counsel proffered that the man "indicated that he had just witnessed a shooting," pointed to the shooter and said "[t]here goes the guy that just shot that young man right there," and "indicated that he still has the gun." That was a proffer, which the prosecutor did not contest,[13] of a substantial evidentiary basis for concluding that the declarant spoke after personally observing the shooting and the man with the weapon.

Turning to the second requirement for finding an excited utterance, Rucker was unable to say exactly how soon after the shooting she spoke with the agitated elderly gentleman, but such exactitude is not demanded.[14] It suffices that the record in the present case provides a substantial basis for concluding that the declaration was made within a reasonably short time of the shooting, while the declarant "was still reacting to the excitement of the incident." [15] The trial judge reasonably could conclude that not many minutes had elapsed, because the shooting evidently occurred while Rucker was inside the McDonald's restaurant for approximately fifteen minutes, and she met the declarant very soon after she left. There is no doubt that "when the utterance is made immediately after the disturbing incident, or a few minutes after the incident, the declarations can properly be admitted under this hearsay exception." [16] The declarant's scared and distressed demeanor "plainly supported" a finding that his statements satisfied the second requirement for admission as an excited utterance.[17]

Lastly, the totality of the circumstances reasonably suggests that the elderly declarant's remarks were "a spontaneous reaction to the exciting event, rather than the result of reflective thought." [18] The speaker was not calm and collected; he did not offer a detailed narrative of a past event; it appears his "remarks were not made under the impetus of reflection." [19]

---

ence that the declarant "actually perceived the shooting ... need not be the only plausible one," and "the statement inferrably was a spontaneous reaction to the traumatic event of the shooting, coming as it did immediately following and from the scene of the crime") (internal quotation marks and citation omitted).

**12.** McCormick on Evidence, *supra* footnote 9, § 272 (footnotes omitted).

**13.** The prosecutor did not ask for a *voir dire* of Rucker to confirm that her testimony would match the proffer.

**14.** *See Brisbon v. United States,* 894 A.2d 1121, 1129 (D.C.2006) (holding that "the trial court erred by insisting that appellant show exactly how much time elapsed between the events in the alley and his statement" offered as an excited utterance).

**15.** *Brisbon,* 894 A.2d at 1130. *See also Lewis v. United States,* 938 A.2d 771, 775 (D.C.2007)

("[T]he case law sets no time limit for determining whether a statement qualifies as an excited utterance; what matters is whether the declarant is still under the influence of the startling event at the time the statement is made, regardless of how much time has passed.")

**16.** *Alston,* 462 A.2d at 1127 (internal citations omitted). *See, e.g., Lewis,* 938 A.2d at 775–76 (citing cases).

**17.** *Brisbon,* 894 A.2d at 1130.

**18.** *Randolph v. United States,* 882 A.2d 210, 217 (D.C.2005) (citation and internal quotation marks and brackets omitted).

**19.** *Young v. United States,* 391 A.2d 248, 250 (D.C.1978).

Rather, he was agitated and distressed in the immediate aftermath of a shocking and frightening shooting, and he blurted out his concerns before the commotion subsided to a total stranger who had only asked him if he was "okay."[20] The accepted premise of the excited utterance exception—"that a person making an exclamation or a statement while under the influence of the excitement or shock caused by witnessing . . . an extraordinary event, . . . is unlikely to fabricate an untruth, but, on the contrary, has a tendency to disclose what is actually on his mind [because] [t]he mental stress and nervous strain preclude deliberation and bar reflection"[21]—supports a finding that the third prong of the test for an excited utterance was met.

### B.

■ The trial judge excluded the hearsay identification of the person who shot Seymour not because it failed to meet the requirements of the excited utterance exception, but for two other reasons. First, the judge was persuaded that D.C.Code § 14–102(b) conditioned the admissibility of the identification on the declarant's availability at trial for cross-examination. However, as we explained in *Hallums v. United States*, satisfaction of the requirements of the hearsay exception furnished an alternative ground for admission:

> Although we have not in the past expressly considered the interaction between the statute and the common law of hearsay, we are confident that they provide separate bases for admissibility. The statute provides that an out-of-court

identification "is not hearsay" if the declarant made the identification "after perceiving the person," testifies at trial, and is available for cross-examination concerning the statement. § 14–102(b)(3). Conversely, an identification that is part of an out-of-court statement not satisfying § 14–102(b)(3) *is* hearsay, but may be admissible nonetheless under an exception to the hearsay rule independent of the terms of § 14–102(b)(3).[22]

Section 14–102(b)(3) does not invalidate the numerous cases in which we have upheld the introduction of out-of-court identifications by unavailable declarants under the excited utterance exception.[23]

■ Second, the judge expressed his concern about the uncertain reliability and competency of the absent declarant. For example, the judge worried, the gentleman could have been mentally ill; or, we may suppose, he might have been intoxicated or otherwise impaired, or biased in appellant's favor, to enumerate a few other possible reasons not to find him competent or credible. The judge also assumed that the bystander did not previously know the person he pointed out as Seymour's assailant.[24] But such hypothesized possibilities would not justify excluding the man's excited utterance, even if they were true. "On the theory that there is a countervailing assurance of reliability in the excitement of the event, the other aspects of competency [apart from opportunity to observe] are not applied. Thus, an excited utterance is admissible despite the fact

---

20. As in *Reyes*, 933 A.2d at 791, the question did not invite the declarant "to reflect on the event or to premeditate a response."

21. *Odemns*, 901 A.2d at 777 n. 6 (quoting *United States v. Edmonds*, 63 F.Supp. 968, 971 (D.D.C.1946)).

22. *Hallums v. United States*, 841 A.2d 1270, 1275 (D.C.2004).

23. *See, e.g., Lewis*, 938 A.2d at 774–76; *Stancil v. United States*, 866 A.2d 799, 802 (D.C. 2005); *Jones v. United States*, 829 A.2d 464, 466 (D.C.2003); *Lyons v. United States*, 683 A.2d 1080, 1082–83 (D.C.1996); *Young v. United States*, 391 A.2d 248, 251 (D.C.1978); *Nicholson*, 368 A.2d at 564.

24. See footnote 1, *supra*.

that ... the declarant was incompetent by virtue of mental illness." [25] Similarly, we have held that a declarant's intoxication or bias in favor of the defendant affects only the weight of the evidence, not its admissibility.[26] The same necessarily holds true for the declarant's prior acquaintance (or lack thereof) with the shooter in this case. In a jury trial, the declarant's credibility is not for the judge to evaluate; it must be "left to the jury." [27]

### C.

■ Even under the *Kotteakos* standard [28] for evaluating error of non-constitutional magnitude, we cannot deem harmless the erroneous exclusion of Rucker's proffered testimony.[29] As the jury's difficulty in arriving at a unanimous verdict may indicate,[30] the government's case against appellant was less than over-

whelming. Despite the number of persons who reportedly were on the scene, including friends of Seymour, the prosecution presented no eyewitness testimony positively identifying appellant as the shooter. The prosecution likewise did not produce the weapon used in the shooting or other incriminating physical evidence. While one government witness (Jackson) testified that appellant held a gun as he fled the scene, another (Detective Giardino) saw no weapon in appellant's hand (and Seymour, who patted appellant down, did not notice a gun on his person). We agree that the prosecution theory, that appellant shot Seymour from behind in their argument over a debt, is circumstantially convincing. But appellant denied the shooting under oath, and the theory of his defense, that one of Seymour's missing friends shot him by accident, is not implausible. The eye-

25. McCormick on Evidence, *supra* footnote 9, § 272.

26. *See Lewis*, 938 A.2d at 776 (upholding admission of excited utterance even assuming that declarant was intoxicated when she made her statements); *Brisbon*, 894 A.2d at 1130 (holding that trial court abused its discretion by excluding excited utterance on the ground that the declarant "was not a reliable witness because he was appellant's longtime friend").

27. *Brisbon*, 894 A.2d at 1130.

28. [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.
*Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

29. We thus need not address appellant's claim that the more stringent *Chapman* stan-

dard of harmlessness beyond a reasonable doubt applies because the exclusion of Rucker's testimony violated his Fifth and Sixth Amendment rights to present a defense and to present witnesses in his favor. *See Smith v. United States*, 809 A.2d 1216, 1223 (D.C. 2002); *see also McDonald v. United States*, 904 A.2d 377, 380 (D.C.2006) ("If the trial court erroneously impaired the exercise of this constitutional right [to present a defense], and the objection to the error has been preserved, the defendant's conviction may stand only if the error was harmless beyond a reasonable doubt.") (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). We note that appellant did not assert a constitutional claim in the trial court. *Cf. Marquez v. United States*, 903 A.2d 815, 817 (D.C.2006) (holding that a hearsay objection does not preserve a Sixth Amendment Confrontation Clause claim for appeal). The government, however, has not asserted that appellant's constitutional claim is reviewable only for plain error, and its brief assumes without discussion that the *Chapman* standard applies.

30. *See Ebron v. United States*, 838 A.2d 1140, 1150 (D.C.2003).

witness identification by an innocent and uninvolved bystander would have been the only direct evidence of the shooter's identity, and it would have corroborated appellant's denial of guilt and exonerated him if credited. There may exist good reasons to be skeptical of the bystander's identification—for instance, neither the bystander nor Rucker identified the shooter to the police when they had the chance to do so at the scene; and one might wonder why the bystander, so apparently frightened by the shooting, remained near the man allegedly still wielding the gun. Nonetheless, in accordance with the rationale for admitting excited utterances as reliable substantive evidence, the jury might have found the bystander's eyewitness identification sufficiently credible to supply at least a reasonable doubt about appellant's guilt. We are not prepared to find it "highly probable" [31] that the jury would have discounted such evidence had it been admitted.

Our conclusion that the error was not harmless depends on the critical assumption that Rucker would have testified substantially in conformance with defense counsel's proffer. Because Rucker was not examined outside the presence of the jury to confirm what she would say, the accuracy of that assumption has not yet been established. Although the proffer of defense counsel, as an officer of the court, is presumptively trustworthy, and the government has never disputed it, we hesitate to reverse appellant's convictions and order a new trial without some further as-surance of the proffer's accuracy. We think it more prudent to follow the course outlined in *Newman v. United States* of remanding "for the trial court to determine whether [Rucker's] actual testimony sufficiently matches the defense proffer." [32] The trial court may exercise its discretion in deciding how it will address that question, though we caution that "[i]n evaluating the reliability of the proffer, ... the court must not seek to evaluate the reliability of the *witness*." [33] An evidentiary hearing may be unnecessary; consideration of the witness's affidavit (or declaration under penalty of perjury) may suffice. The purpose of the inquiry is limited, and it is not to enable the government to cross-examine Rucker in preparation for a retrial.[34]

If the trial court determines that the defense proffer was substantially accurate, it shall vacate appellant's convictions and afford him a new trial.

*So ordered.*

---

**31.** *Odemns,* 901 A.2d at 782 (citations omitted).

**32.** *Newman v. United States,* 705 A.2d 246, 259 (D.C.1997).

**33.** *Id.; accord Brisbon,* 894 A.2d at 1130.

**34.** The purpose of the inquiry is also not for the trial judge to reconsider his discretionary determination that the proffered hearsay qualified as an excited utterance. We have found no error in that part of the judge's ruling, and there is no reason to suppose the judge would (or should) have ruled otherwise had he not erroneously thought exclusion justified on other grounds. Of course, if Rucker's actual testimony materially differs from the proffer, it may be appropriate to reexamine whether it satisfies the requirements of an exception to the rule against hearsay.