### ORDER

■

**In re L.L., Appellant.**

**No. 06–FS–547.**

District of Columbia Court of Appeals.

Argued Jan. 29, 2009.

Decided July 2, 2009.

---

---

Alice Wang, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Janice Y. Sheppard, Assistant Attorney General, with whom Peter Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Attorney General, were on the brief, for the District of Columbia.

Before GLICKMAN and FISHER, Associate Judges, and STEADMAN, Senior Judge.

FISHER, Associate Judge:

Appellant asks us to reverse the adjudication finding him involved in first degree child sexual abuse. D.C.Code § 22–3008 (2001). Because the trial court abused its discretion by admitting the victim's hearsay statements, we reverse and remand for possible further proceedings.

## I. Statement of Facts

### A. The Sexual Encounter

In late August or early September 2004, seventeen-year-old L.L. was living with his five-year-old sister (the victim, A.L.F.) and the rest of his family in Washington, D.C. C.L., their cousin, also lived at the same address, along with his mother. On the day in question, C.L. went with his cousin T. (L.L.'s brother) to an upstairs bedroom. The door was closed, but C.L. peeked through a hole where "the knob was miss-ing." He saw L.L. "on the bed," "on his back," not wearing any clothing except socks. He also saw A.L.F., who was naked, sitting on L.L.'s "groin area." A.L.F. was facing L.L. and "had her legs on both sides of him," so that their groin areas were touching. L.L.'s hands were on A.L.F.'s hips, and he was moving her "up and down."

L.L.'s brother T. "kicked the door open." L.L. then "jumped up ... picked up A.[L.F.] and [ ] kind of like shielded himself with her." C.L. clarified that L.L. sat up on the bed and held A.L.F. in front of him by the hips, so that her feet were dangling above the floor. A.L.F. was not wearing any clothes at this time.

C.L. went downstairs and told his mother, S.L., what he had seen. S.L. then saw A.L.F. at the top of the stairs wearing no pants or underwear, and looking "nervous." Eventually, A.L.F. came downstairs wearing "pants and a shirt." C.L. thought she seemed "scared" because "she was sitting there all quiet and playing with her hands." L.L. was in the bathroom during this time. The water in the bathroom was running, and L.L. called out, "I'm in the bathroom. I'm in the tub."

On September 11, 2004, Joanna Hudson, a Child and Family Services Agency (CFSA) social worker who had previously been assigned to the family, visited the home. S.L. told Ms. Hudson that L.L. had sexually abused A.L.F. A.L.F. herself never told Ms. Hudson about the abuse. When A.L.F. was medically screened (the exact date of the screening is unclear), "[t]here were no medical findings."

### B. The Statements

A.L.F. did not testify, but two of her out-of-court statements were admitted at trial. As a result of Ms. Hudson's report to the CFSA, A.L.F. was sent to live with a foster mother, M.C.C., who happened to be a sergeant with the Metropolitan Police

Department. M.C.C. testified that on March 7, 2005, A.L.F. commented that she wanted to live with M.C.C. forever. M.C.C. asked if she would miss her family, and A.L.F. said that she would not miss her older brother, L.L. When M.C.C. inquired why she would not miss her brother, A.L.F. responded that he was a bad boy, but did not want to say anything else. After M.C.C. said that A.L.F. could trust her because M.C.C. was a police officer, A.L.F. started "really crying hard," "covering her face" and "visibly shaking." A.L.F. finally explained, " 'we were in the bedroom and he pulled his pants down and he pulled my pants down and when he was done he ran into the bathroom.' " M.C.C. reported this conversation in an email to A.L.F.'s doctor.

On March 22, M.C.C. took A.L.F. to see her doctor. After the visit, M.C.C. asked A.L.F. whether she had remembered to tell her doctor about the incident with L.L. A.L.F. was "real short with [her] and she didn't really want to talk about it." M.C.C. asked whether A.L.F. knew what incident she was talking about, and A.L.F. replied " 'yes, I remember when [L.L.] humped me.' "

### C. The Trial Court's Findings

The trial court credited the testimony of the government's witnesses, noting that C.L.'s testimony was corroborated by A.L.F.'s statements, and found that "L.L., beyond a reasonable doubt, is involved in first degree child sex abuse." However,

the trial judge never explicitly found that L.L. had engaged in "penetration, however slight, of the [ ] vulva of another by a penis," as required by D.C.Code § 22–3001(8)(A) (2001). Instead, the court found "that L.L. put his penis against the vulva, that is, the external parts of the female sex organs, of the complaining witness, A.L.F., his younger sister . . . ." [1]

## II. Admitting A.L.F.'s First Statement to M.C.C. Was an Abuse of Discretion

### A. A.L.F's First Statement Was Not an Excited Utterance

▆▆▆▆ Appellant argues that A.L.F.'s statement to M.C.C., in which she said L.L. "did bad things to me . . . we were in the bedroom and he pulled his pants down and he pulled my pants down and when he was done he ran into the bathroom[,]" was erroneously admitted as an excited utterance over appellant's hearsay objection. "Because the decision whether a statement is admissible as a spontaneous utterance depends on the particular facts of each case and is thus a discretionary matter, this court reviews such matters only for abuse of discretion." *Brisbon v. United States,* 894 A.2d 1121, 1128 (D.C.2006) (citation and internal quotation marks omitted). In conducting this review, "the appellate court makes two distinct classes of inquiries . . . . It must determine, first, whether the exercise of discretion was in error and, if so, whether the impact of that error requires reversal. It is when both

---

1. The court may have been misled by the charging document, which alleged that L.L. "put his penis in or against A.[L.]F.'s . . . vagina, in violation of D.C.Code, 2001 Ed. § 22–3008." Although the prosecutor seemed at times to be distinguishing between full penetration (which the government need not prove) and slight penetration, her argument was somewhat confusing:

> The mere fact that L.L.'s penis was up against and moving against the outer por-

tion of A.L.F.'s vaginal area is sufficient under the case law . . . that in fact the outer part of the female organs, the labia, is all that the penis has to touch. And for those two parts to be together, they were touching and the up and down motion, the rubbing motion were enough to have him be in what is commonly called the lips of the vagina or vulva. And that's how it was charged in this case, in or against.

these inquiries are answered in the affirmative that we hold that the trial court 'abused' its discretion." *Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979). "A discretionary ruling founded on a mistake of law . . . is by definition erroneous." *Simmons v. United States,* 945 A.2d 1183, 1187 (D.C.2008) (citations and internal quotation marks omitted).

■ To satisfy the excited (or spontaneous) utterance exception, the following factors must exist:

(1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the remark.

*Odemns v. United States,* 901 A.2d 770, 776 (D.C.2006) (citations omitted); *see also Clarke v. United States,* 943 A.2d 555, 558 (D.C.2008) ("the earmarks of an excited utterance [are] spontaneity, lack of reflection or forethought, [and] a reflexive response to a traumatic event"); *Smith v. United States,* 666 A.2d 1216, 1223 (D.C. 1995) ("The critical factor is that the declaration was made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it.") (citations and internal quotation marks omitted). Furthermore, even when circumstances satisfying the first element are demonstrated, "if the reaction has ceased during peaceful hours between the event and the utterance, the statement cannot be admitted." *Alston v. United States,* 462 A.2d 1122, 1127 (D.C. 1983). Thus, in determining whether A.L.F.'s statement was an excited utterance, we consider the impetus for the

statement, the length of time that passed between the serious occurrence and the statement, and whether the totality of circumstances suggests that the statement was made without prior reflection. *Odemns,* 901 A.2d at 776–77.

When we apply the legal standard to this record, it becomes apparent that A.L.F.'s statement to M.C.C. should have been excluded. Although a youth perhaps may remain in a state of shock longer than an adult, *see Beausoliel v. United States,* 71 App. D.C. 111, 114, 107 F.2d 292, 295 (1939), our case law simply does not support the proposition that a statement made *six months* after the startling event may constitute an excited or spontaneous utterance. *See Alston,* 462 A.2d at 1128 (statement of four-year-old girl was not an excited utterance because it was made after "several peaceful hours passed between the time of the alleged offense and the time of the child's initial response to her mother's inquiry").

A.L.F.'s statement certainly was not "a calm narrative of a past event," *Alston,* 462 A.2d at 1127, but A.L.F. clearly had not been "in the throes of the traumatic episode, before she could reflect," for the entire six months between the sexual encounter and her statement. *See Fitzgerald v. United States,* 443 A.2d 1295, 1304 (D.C.1982) (en banc). To the contrary, right before she made the statement, A.L.F. was having a pleasant conversation with her foster mother, confiding how much she enjoyed living at her house. It was not until M.C.C. urged A.L.F. to talk about what had happened to her that A.L.F. began to cry and shake.

The District of Columbia argues that because "A.[L.]F. was not upset prior to her statement, but rather became upset when she 'reflected on what her brother had done to her,'" she was still under the emotional stress caused by the traumatic event. However, it is precisely because

A.L.F. had "reflected" on her experience that her statement falls outside the realm of excited utterances. *See Smith,* 666 A.2d at 1223 (the key inquiry in conducting an excited utterance analysis is "to assure that the declarant has not reflected upon his statement") (citations omitted); *Battle v. United States,* 630 A.2d 211, 214 n. 2 (D.C.1993) ("The [fourteen-year-old] complainant in the instant case had sufficient time, given her age, to reflect on the assault. The fact that she was crying and distraught six weeks later when she told her aunt about the assault is insufficient, standing alone, to make the declaration admissible under the excited utterance exception.") (citations omitted).

A person surely may become distraught by "reliving" a traumatic experience, but that is because she has reflected on the event-she has revived bad memories. Our colleagues in the military have said it well:

> There is a difference between the stress or excitement caused by the original event and that caused by the trauma of having to retell what happened after initially calming down. Only the former is admissible as an excited utterance. "The basis of the excited utterance exception is that the speaker is under the fresh emotional impact of a startling event, not that the speaker relives her emotions when later telling about the event."

*United States v. Green,* 50 M.J. 835, 840 (Army Ct.Crim.App.1999) (quoting *United States v. Barrick,* 41 M.J. 696, 699 (A.F.Ct. Crim.App.1995)).

The government mistakenly relies on our decision in *Price v. United States,* 545 A.2d 1219 (D.C.1988). There, the victim, who had recently begun a romantic relationship with Ms. Wilson, was shot by defendant Price, with whom Ms. Wilson was also romantically involved. *Id.* at 1220–21. Although Ms. Wilson was on the scene of the shooting, it appeared that she did not know that the victim had been seriously injured. *Id.* at 1221. About two hours later, the victim's brother called from the hospital and told her that the victim had been wounded. *Id.* "Sounding as if she was in tears, [Ms. Wilson] blurted out, 'I didn't know he was gonna do that,' and kept repeating the words." *Id.* In response to questioning, she named Price as the shooter. *Id.* The trial court admitted these statements as excited utterances, over defense objection. *Id.* at 1223.

We affirmed, holding that "the indicia of nervous shock and spontaneity in the instant case were sufficient to sustain as a proper exercise of the trial court's discretion the admission of the challenged statement as an excited utterance, particularly in a situation where such utterance, by incriminating a man whom the declarant professed to love, could scarcely be viewed as the product of reflection." *Id.* at 1227. We concluded that "[i]n view of the romantic relationship between witness and victim, the discovery that the latter had been wounded and hospitalized might well have caused her to burst into tears and triggered the words exculpating herself and incriminating her other lover." *Id.* at 1226. The spontaneity of the statements was confirmed by the declarant's reluctance to incriminate the defendant at the police interview the following day, showing that "upon reflection, the witness had already regretted her disclosure." *Id.* at 1227. The government relies on *Price* to argue that the length of time between the offense and A.L.F.'s statements to M.C.C. is irrelevant because A.L.F. made the statements in response to the stimulus of M.C.C. mentioning her brother, L.L. However, we have never held that the declarant's *thinking about* a traumatic event is sufficient to trigger an excited utterance. *See Smith,* 666 A.2d at 1223 (trial court properly admitted statement to 911 operator as an excited utterance after determining that victim's "excited state was caused

by the shock of being robbed at gunpoint," rather than by discussing the robbery with his mother, who insisted that he call 911). Furthermore, the totality of the circumstances surrounding A.L.F.'s statements lacked "indicia of nervous shock and spontaneity." *Price*, 545 A.2d at 1227; *see also Portillo v. United States*, 710 A.2d 883, 885 (D.C.1998) (holding that admission of statement as excited utterance was error where the statement was made to a police officer under circumstances that were "much more deliberative in nature than spontaneous").

Unlike the declarant in *Price*, A.L.F. did not receive any new and startling information from M.C.C. Instead, M.C.C. coaxed A.L.F. to describe the problem with L.L., even invoking her status as a police officer to elicit the explanation. As the trial court observed, "it was only when [A.L.F.] reflected on what had happened to her and what the respondent had done to her that she became distraught." Contrary to the trial court's interpretation and the government's argument, the fact that A.L.F. made the statement as a result of reflection negates the conclusion that it was an excited utterance. *See Price*, 545 A.2d at 1227 ("In all cases the ultimate question is whether the statement was the result of reflective thought or whether it was rather a spontaneous reaction to the exciting event.") (citation and internal quotation marks omitted). The statement therefore should have been excluded.

### B. Admitting the Statement Was Not Harmless

▮▮▮ Having decided that it was error to rely on the substance of A.L.F.'s statement "does not end our inquiry.... We must now address whether the error was reversible, and thereby an abuse of discretion." *Mercer v. United States*, 724 A.2d 1176, 1194 (D.C.1999). *See Washington v. United States*, 884 A.2d 1080, 1095 (D.C. 2005) ("In determining whether the trial court has abused its discretion in making an evidentiary ruling, we consider 'whether the exercise of discretion was in error and, if so, whether the impact of that error requires reversal.'") (quoting *Johnson*, 398 A.2d at 367). In this context, "we must look at the 'totality of the circumstances' and decide whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Goines v. United States*, 905 A.2d 795, 802 (D.C.2006) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

When announcing its findings, the trial court expressly relied on A.L.F.'s statement, as related by M.C.C. Nevertheless, the government argues that admission of the statement was harmless because, "[w]hile [the trial court] found that M.C.C.'s testimony corroborated C.[ ]L.'s testimony, that does not necessarily mean it was used as substantive evidence." According to the government, "A.[L.]F.'s statements did no more than establish that a sexual assault was reported...." This argument overlooks the fact that excited utterances normally are admitted for their substantive value.[2] Indeed, the prosecutor

---

**2.** *See, e.g., Simmons v. United States*, 945 A.2d 1183, 1192 (D.C.2008) (referring to the "rationale for admitting excited utterances as reliable substantive evidence"); *Portillo*, 710 A.2d at 884 ("It is a settled concept that excited utterances ... may be admissible as an exception to the general prohibition against hearsay evidence."); *Fitzgerald v. United States*, 443 A.2d 1295, 1303 (D.C.1982) (en banc) (under the excited utterance exception, the "declaration can be admitted as original evidence and the details of the declaration are admissible as substantive evidence of the truth of such facts").

vigorously argued that the first statement should be admitted, not merely under the "report of rape" doctrine, but as an excited utterance, "so that does come in substantively." At the end of this argument, the court ruled that it would "allow the first statement in as an excited utterance," and it never stated or even suggested that it was only admitting the statement as nonsubstantive corroboration. Because the trial court expressly referred to the substance of the statement when explaining its decision that L.L. was guilty of first degree child sex abuse, we hold that admitting the statement was an abuse of discretion. *See Johnson,* 398 A.2d at 367 (an abuse of discretion occurs when "the exercise of discretion was in error and ... the impact of that error requires reversal").[3]

### III. The Evidence Was Not Sufficient to Convict L.L. of First Degree Child Sex Abuse

■ In an attempt to prevent the government from retrying him for first degree child sexual abuse, L.L. argues that the evidence was "insufficient to prove beyond a reasonable doubt the essential element of penetration."[4] When

reviewing a sufficiency of the evidence claim, "we must view all the evidence in the light most favorable to the government and give deference to the right of the [fact finder] to weigh the evidence, determine the credibility of the witnesses, and draw all justifiable inferences of fact, making no distinction between direct and circumstantial evidence." *Earle v. United States,* 612 A.2d 1258, 1265 (D.C.1992). "The evidence must support an inference, rather than mere speculation, as to each element of an offense." *Lewis v. United States,* 767 A.2d 219, 222 (D.C.2001). "A court must deem the proof of guilt sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc) (emphasis in original) (citation and internal quotation marks omitted).

■ First degree child sexual abuse is defined as engaging in a "sexual act" with a child who is at least four years younger than the perpetrator. D.C.Code § 22–3008 (2001). A sexual act includes "[t]he penetration, however slight, of the anus or

---

3. Because we conclude that admission of the first statement was an error requiring reversal, we do not reach appellant's argument that A.L.F.'s second statement was erroneously admitted under the report of rape rule. For the same reason, we need not decide whether admission of the statement also violated L.L.'s confrontation clause rights. *See generally Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (explaining that the admission of "testimonial" hearsay against a criminal defendant violates the confrontation clause unless the defendant has had a previous opportunity to cross-examine the declarant); *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (defining "testimonial" statements as those made under circumstances that "objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to

establish or prove past events potentially relevant to later criminal prosecution."). *See also Olevsky v. District of Columbia,* 548 A.2d 78, 81 (D.C.1988) ("The practice of avoiding constitutional issues if it is reasonably possible to do so is predicated on a fundamental rule of judicial restraint, which is perhaps more deeply rooted than any other doctrine of constitutional adjudication.").

4. We review the claim of insufficiency by relying on the same evidence as the trial judge. *See Thomas v. United States,* 557 A.2d 599, 601 (D.C.1989) (adopting the Supreme Court's rule that "the Double Jeopardy Clause does not prevent retrial as long as the total evidence admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict."). We therefore include A.L.F.'s two hearsay statements in our review.

vulva of another by a penis." D.C.Code § 22–3001(8)(A) (2001). We have held that, "on appellate review, 'any evidence tending to show the slightest penetration ... is sufficient....'" *Proctor v. United States*, 685 A.2d 735, 737 (D.C.1996) (citing *Barrera v. United States*, 599 A.2d 1119, 1125 n. 4 (D.C.1991)).[5] "[P]enetration of the female organs may be proved by circumstantial evidence." *Williams v. United States*, 357 A.2d 865, 867 (D.C.1976); *see also Commonwealth v. Fowler*, 431 Mass. 30, 725 N.E.2d 199, 203 (2000) ("Penetration can be inferred from circumstantial evidence."); *Davidson v. State*, 580 N.E.2d 238, 242 (Ind.1991) ("the factfinder may infer penetration from circumstantial evidence ..."). "[W]hile the trier of fact is entitled to draw a vast range of reasonable inferences from evidence [,however,] he or she may not base an adjudication of guilt on mere speculation." *In re As.H.*, 851 A.2d 456, 459 (D.C.2004) (internal quotation marks, editing, and citation omitted).

The evidence at trial established that appellant was lying on his back, that A.L.F. was sitting on his groin area, with her legs on either side of his body, and that their groin areas were touching. Both children were naked. Appellant held A.L.F. by her hips and was moving her "up and down." While a reasonable finder of fact could infer that L.L. was, at the very least, attempting to sexually gratify himself by creating friction between his penis and the groin area of his little sister,

these facts by themselves do not support a finding of penetration beyond a reasonable doubt. A.L.F. did not testify about what had happened to her. C.L. did not testify that he saw L.L. penetrate A.L.F., nor did he provide sufficient descriptive detail to support that conclusion. There were no medical findings from the examination of A.L.F., nor was there any other forensic evidence suggesting penetration. While L.L. clearly was engaged in a sexual crime of some kind, there is not sufficient evidence that appellant had committed a "sexual act," as opposed to a "sexual contact." [6] *Cf. Proctor*, 685 A.2d at 738 (rejecting the government's "assertion that, given a cylindrical object like the penis shaft, any oral contact between it and the mouth inferably would have caused the lips to open." This argument was "a matter of surmise and not a rational inference beyond a reasonable doubt from the fact alone that the victim placed her lips 'on' the penis."). Furthermore, the trial court never explicitly found penetration. In its findings of fact, the trial court stated, "the court finds that L.L .... put his penis against the vulva, that is, the external parts of the female sex organs, of the complaining witness." On this record, the evidence was insufficient to prove penetration.

## IV. Conclusion

Because A.L.F.'s hearsay statement was admitted erroneously, and with prejudicial impact, we reverse the adjudication of de-

---

5. As we noted in *Proctor*, "it is well settled that 'entry of the anterior of the female genital organ, known as the vulva or labia, is sufficient penetration ... it is not necessary that the vagina itself be penetrated....'" 685 A.2d at 737 n. 4 (quoting CHARLES E. TORCIA, 3 WHARTON'S CRIMINAL LAW § 278, at 17–18 (15th ed.1995)); *see also Williams v. United States*, 357 A.2d 865, 867 (D.C.1976) (penetration "is committed if the male organ enters only the labia of the female organs").

6. "Sexual contact," an element of second degree child sexual abuse, is defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C.Code § 22–3001(9) (2001).

linquency. Our holding that the evidence of first degree sexual abuse was insufficient bars a retrial on this charge, although it would not necessarily bar lesser charges based on the same events.[7] However, although neither party has briefed the issue, it appears that the Family Division of the Superior Court may have lost jurisdiction over L.L. because his twenty-first birthday has passed. *See* D.C.Code § 16–2303 (2001) (providing that the Family Division retains jurisdiction over a child "until [he] becomes twenty-one years of age, unless jurisdiction is terminated before that time"). We therefore reverse the judgment on appeal and remand this case to the Superior Court for further action consistent with this opinion and applicable legal standards.

*So ordered.*

---

7. Our holding that there was insufficient proof of penetration neither expressly nor impliedly acquits appellant of charges that do not require such proof. *See generally Anderson v. Mullin,* 327 F.3d 1148, 1156–57 (10th Cir.2003) (state appellate court's "reversal implied nothing with respect to the defendant's guilt or innocence of second degree burglary, since [that court] limited its finding of insufficient evidence to the element distinguishing first and second degree burglary.") (internal quotation marks and editing omitted); *see also United States v. Ginyard,* 511 F.3d 203, 204 (D.C.Cir.2008) (evidence of drug quantity was insufficient to prove that defendant possessed fifty or more grams of cocaine base with intent to distribute; defendant "may be retried on lesser-included charges of that count without transgressing

the bar against double jeopardy"); *Shute v. Texas,* 117 F.3d 233, 235 (5th Cir.1997) (double jeopardy did not bar prosecution for a lesser included offense "after a conviction on the greater offense was reversed for insufficient evidence of an aggravating element").

Appellant argues that second degree child sexual abuse is not a lesser included offense of first degree child sexual abuse, because the former contains an intent element that the latter does not. See note 6, *supra.* Therefore, maintains appellant, "this Court should not direct entry of adjudication for second-degree child sexual abuse." We do not reach this question because the government has not challenged appellant's analysis of the lesser included offense issue, nor has it asked us to enter judgment on second degree child sexual abuse or any lesser offense.